**THE RINALDO LAW FIRM**
Richard Rinaldo
rrinaldo@rinaldolaw.com
1767 Morris Ave, Suite 205
Union, New Jersey 07083
Telephone: (908) 352-2500
Facsimile: (908) 352-2770
***Attorney for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON, a New Jersey corporation<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Thomas Young ("Plaintiff"), on behalf of himself and all others similarly situated, and by and through his undersigned counsel, alleges the following based upon his own personal knowledge and the investigation of his counsel. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a proposed class action against Johnson & Johnson ("Defendant") for misleading consumers about the nutritional and health qualities of its spread products, namely Benecol® Regular Spread and Benecol® Light Spread ("Benecol" or "Products").

2. During the period July 28, 2005 to the present (the "Class Period"), Defendant engaged in a wide-spread marketing campaign to mislead consumers about the nutritional and health qualities of its Products. Specifically, Defendant made misleading statements that its Products were nutritious, healthy to consume and better than similar butter and margarine products on the market. Defendant was thereby able to command a premium price by deceiving consumers about the healthfulness of its product and distinguishing itself from similar spread and margarine products. Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products and increase their own profits.

3. Defendant conveyed this message through a significant marketing and advertising campaign. For example, Defendant stated on the packaging of its Products, as well as in marketing, the following: 1) Proven to Reduce Cholesterol; 2) NO TRANS FAT, directly above a symbol of a heart to convey heart health; 3) No Trans Fatty Acids; 4) ½ the fat and calories of margarine; 5) Excellent source of Vitamin E; and 6) Part of a Healthy Lifestyle-- all conveying health benefits gained by choosing the Products.

4.      Additionally, Defendant's packaging and marketing of the Products focuses on the health benefits of Plant Stanol Esters. The Products' packaging states: "Plant Stanol Esters, the unique ingredient found only in BENECOL® Spreads, are derived from natural plant components found in vegetable oils such as soy. Plant Stanol Esters proven ability to lower cholesterol is supported by *over 25 studies*, including one reported in the New England Journal of Medicine." The underside of the packaging states that "2 or more servings of BENECOL® Spreads each day:" 1) Reduces "bad" (LDL) cholesterol; 2) Reduces total cholesterol; 3) Works to further reduce cholesterol for those on cholesterol-lowering statin medications; 4) Blocks cholesterol from being absorbed into your body. The interior of the packaging also contains "Quick Tips for using BENECOL® Light Spread" and provides recipes for using the Products in different meals. Defendant even market its Products heavily to physicians, encouraging them to prescribe its use for their patients with elevated cholesterol levels as an "option[] for lowering their cholesterol as part of a comprehensive lifestyle change."

5.      Unfortunately for consumers, all these claims are false and misleading. Defendant's healthful claims are misleading since the Products contain a highly unhealthy, non-nutritious ingredient known as *partially hydrogenated oil.* This partially hydrogenated oil is an artificial, man-made substance known to cause a number of health problems, including coronary disease, heart attacks and death, as well as raising "bad" LDL cholesterol levels and lowering "good" HDL cholesterol levels.    In fact, the health problems associated with partially hydrogenated oil are so wide-spread and debilitating that doctors have compared the oil to poison and have advised consumers to avoid any consumption of this oil. As stated in a review of the book "Poison in the Food – Hydrogenated Oils":

    The U.S. population is being slowly poisoned by a single ingredient
    deliberately added to the human food supply...the World Health Organization

tried to outlaw this ingredient decades ago....hundreds of doctors, researchers and scientists are warning us about the detrimental health effects of this ingredient....[T]his substance causes cancer, birth defects, heart disease, diabetes and many other fatal diseases.

In fact, this substance causes a cell-by-cell failure of the human body by destroying the porosity and flexibility of healthy cell membranes. It's like tearing your body down from the inside out.

What ingredient am I talking about? Hydrogenated oils, of course. For decades, food companies...have lied to use about hydrogenated oils, telling us this disease-causing substance was not merely safe, but actually better for your health than other sources of fat like butter. But today, we know this was nothing more than a global deception, a hijacking of science by the food manufacturers in a blatant attempt to get people to buy their high-profit products like margarine, shortening and snack crackers.

*See* http://www.truthpublishing.com/poisonfood_p/yprint-cat21284.htm (last visited July 11, 2011).

6.      Defendant's numerous claims mislead consumers regarding the health qualities of its Products. These claims include that the Products are proven to reduce cholesterol, contain no trans fat, contain half the fat and calories of margarine, and are part of a healthy lifestyle. Plaintiff brings this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

7.      This court has jurisdiction over all causes of action asserted herein, pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and the Defendant.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding the quality of its Products, occurred within this district.

## PARTIES

9.     Plaintiff Thomas Young is a resident of Kings County, New York because Plaintiff is domiciled in Brooklyn, New York and has no intention of changing his domicile. Plaintiff purchased Defendant's Products fairly regularly during a five-year period, at least once every couple of months. Plaintiff specifically relied on the advertisements and representations promoting the cholesterol lowering benefits, as well as other health benefits, in purchasing Defendant's Products.     As stated herein, Defendant's representations are misleading and deceptive because the Products are not healthy, as represented, because they contain dangerous, unhealthy partially hydrogenated oil. Plaintiff suffered injury in that he would not have purchased the Products at a premium price had these misrepresentations not been made.

10.     Defendant Johnson & Johnson ("JNJ") is a New Jersey corporation with its principal place of business in New Jersey.

## SUBSTANTIVE ALLEGATIONS

11.     The presence of partially hydrogenated oil in food is a major health concern for all Americans and has been cited as a leading cause of heart disease and death. For example, the Harvard School of Medicine reports that:

> A 1993 Harvard study strongly supported the hypothesis that intake of partially hydrogenated vegetables oils contributed to the risk of having a heart attack...It lowers levels of high-density lipoprotein (HDL) particles, which scour blood vessels for bad cholesterol and truck it to the liver for disposal. It also promotes inflammation, an overactivity of the immune system that has been implicated in heart disease, stroke, diabetes, and other chronic conditions....This multiple-pronged attack on blood vessels translates into heart disease and death.

*See* http://www.hsph.harvard.edu/nutritionsource/nutrition-news/transfats/ (last visited July 15, 2011).

12.    The report: "Poison in the Food – Hydrogenated Oils" also states the dangers of hydrogenated oils as follows:

Hydrogenated oils are poisons, in the sense that they were never intended for human consumption. They don't exist in nature. They're not found in any natural, raw, unprocessed foods at all.   In fact, there is no nutritional requirement whatsoever in the human body for hydrogenated oils....

These are the diseases and conditions caused by the consumption of hydrogenated oils...Heart disease, breast cancer, prostate cancer, colon cancer...high bad cholesterol/good cholesterol ratio, high blood sugar levels...tumor growth, progression of type 2 diabetes....

Adams, M.; *Poison in the Food: Hydrogenated Oils* (Truth Publishing, 2009).

13.    Defendant has engaged in a widespread marketing and advertising campaign to portray its Products as nutritious, healthy and safe to eat.  Defendant engaged in this misleading and deceptive campaign to charge a premium and take away market share from other similar products.

14.    Defendant's misleading and deceptive packaging, for example, all prominently state on the front of each of the Products the following: 1) Proven to Reduce Cholesterol; 2) NO TRANS FAT, directly above a symbol of a heart to convey heart health; 3) No Trans Fatty Acids; 4) ½ the fat and calories of margarine; 5) Excellent source of Vitamin E; and 6) Part of a Healthy Lifestyle.

15.    In combination with these misleading claims made on its packaging, Defendant has conducted multi-million dollar, widespread marketing and advertising campaigns to deceptively convey the message that its Products are nutritious and healthy.  For example, Defendant promotes the Products through a commercial which states that the Products are a "heart healthy alternative to butter," "Proven to reduce cholesterol," and for consumers to "Make Benecol part of your healthy lifestyle."  *See* http://benecolusa.com/index.jhtml (last visited June 23, 2011).

16.    Defendant's packaging and marketing of the Products focuses on the health benefits of Plant Stanol Esters.  The Products' packaging states: "Plant Stanol Esters, the unique

ingredient found only in BENECOL® Spreads, are derived from natural plant components found in vegetable oils such as soy. Plant Stanol Esters proven ability to lower cholesterol is supported by *over 25 studies*, including one reported in the New England Journal of Medicine." The underside of the packaging states that "2 or more servings of BENECOL® Spreads each day:" 1) Reduces "bad" (LDL) cholesterol; 2) Reduces total cholesterol; 3) Works to further reduce cholesterol for those on cholesterol-lowering statin medications; 4) Blocks cholesterol from being absorbed into your body. The interior of the packaging also contains "Quick Tips for using BENECOL® Light Spread" and provides recipes for using the Products in different meals. Defendants even market their Products heavily to physicians, encouraging them to prescribe its use for their patients with elevated cholesterol levels as an "option[] for lowering their cholesterol as part of a comprehensive lifestyle change."

17.     Unfortunately for consumers, the Products are not based upon healthy ingredients, but rather include dangerous, non-nutritious, unhealthy partially hydrogenated oil. Statements on Defendant's packaging that convey healthfulness are deceptive and misleading when the actual ingredients of the Products include dangerous partially hydrogenated oil.

18.     Defendant prominently labels the Products with the message "Proven to Reduce Cholesterol." The label depicts a heart-shaped pad of the spread, further emphasizing the notion that using the Products will have salutary effects on heart health, including cholesterol levels. However, the Products contain partially hydrogenated oil, which increases "bad" LDL cholesterol and decreases "good" HDL cholesterol, counter to the claims on the packaging. Furthermore, Defendant's mislead consumers through statements on the interior of the packaging, stating that the product contains an insignificant amount of *trans* fat, thereby misleading consumers into buying a spread with partially hydrogenated oil instead of a healthier alternative.

19.     Defendant's Products direct consumers to the Products' website (www.benecolUSA.com) for more information. The website, in turn, contains various messages and depictions reinforcing that the Products have a salutary effect on human health and

encourages the consumer to make Benecol "a part of your healthy lifestyle." These messages are false and misleading because Benecol contains partially hydrogenated oil, which causes heart disease, cancer, and type-2 diabetes, and therefore harms rather than benefits human health.

20.     As stated herein, these statements and the wide-spread marketing campaign portraying the Products as healthy and nutritious are misleading and deceptive because the Products contain dangerous, unhealthy, and non-nutritional partially hydrogenated oil.

## CLASS ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons in the United States (except for residents of California) who purchased the Defendant's Products during the Class Period (the "Class") and a sub-class of New York residents (the "Sub-Class"). Excluded from the Class are officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant, and its legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest, as well as California residents.

22.     At this time, Plaintiff does not know the exact number of Class members, however, given the nature of the claims and the number of retail stores selling Defendant's Products nationally, Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

23.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a.  Whether Defendant labeled, marketed, advertised and/or sold the Products to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning the nutritional and health qualities of its Products;

b. Whether Defendant omitted and/or misrepresented material facts in connection with the sales of its Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein; and

d. Whether Defendant's labeling, marketing, advertising and/or selling of its Products as healthy and nutritious constitutes an unfair or deceptive consumer sales practice.

24.   Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendant's Products at a premium in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

25.   Plaintiff will adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class.

26.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

27.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Civ. R. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

28.   The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

29.   Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's

systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (On Behalf of All Members of the Class)
#### (New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*)

30.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

31.    At all relevant times, Defendant was and is a "person" as defined by N.J.S.A. 56:8-1(d).

32.    At all relevant times, Benecol constituted "merchandise" as defined by N.J.S.A. 56:8-1(c).

33.    At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of Benecol at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

34.    At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of Benecol met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

35.    N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression, or omission … is declared to be an unlawful practice…"

36.    As described in detail above, Defendant uniformly misrepresented to Plaintiff and each member of the Class, by means of its advertising, marketing and other promotional materials, and on Benecol's labeling and packaging, Benecol's nutritional content and dietary benefits.

37.    Defendant has therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and

the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in their manufacturing, advertising, marketing, selling and distribution of Benecol. Defendant has therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

38.     As a direct and proximate result of Defendant's improper conduct, Plaintiff and other members of the Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for Benecol than they would have, and/or by purchasing Benecol which they would not have purchased, if the benefits of taking such products had not been misrepresented, in amounts to be determined at trial.

39.     THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### (New York Sub-Class Only)
### (New York General Business Law § 349)

40.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

41.     Defendant designed the product labeling and marketing with intent to sell, distribute, and increase the consumption of Benecol.

42.     As fully alleged above, by advertising, marketing, distributing and/or selling its Benecol products with false and misleading statements to Plaintiff and other members of the Sub-Class, Defendants engaged in, and continue to engage in, deceptive acts and practices.

43.     Plaintiff and other members of the Sub-Class seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Sub-Class members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise the healthful nature of its Products.     Absent injunctive relief, Defendant will continue to advertise, marketing, distribute and/or sell Benecol products labeled as beneficial and having particular healthful characteristics when it is not.

44.     Defendant's violations constitute unlawful business acts and practices, which caused Plaintiff and Sub-Class members to pay a premium and suffer pecuniary loss. Specifically, Defendant's false, deceptive, and misleading statements as to the health qualities of Benecol caused consumers to purchase at a premium Defendant's product believing that it was healthy, when in fact it was not because it contained dangerous partially hydrogenated oils.

45.     In this regard, Defendant has violated and continues to violate § 349 of the General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violations of § 349 as described above, Plaintiff and other members of the Sub-Class have suffered damages, in an amount to be determined at trial.

46.     THEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (On Behalf of the Class)
### (Breach of Express Warrant)

47.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

48.     Defendant provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its Benecol products were beneficial and had particular beneficial characteristics as set forth above.

49.     Defendant breached these warranties which resulted in damages to Plaintiff and other members of the Class, who purchased and overpaid for Benecol, which was not beneficial in that it contains partially hydrogenated oils and did not otherwise conform to Defendant's warranties.

50.     As a proximate result of the breach of warranties by Defendant, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendant, and they were deprived of

the benefit of their bargain and spent money on products that did not have any value, had less value than warranted or that they would not have purchased and used had they known the true facts about them.

51.     THEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (On Behalf of the Class)
### (Breach of Implied Warranty of Merchantability)

52.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

53.     Plaintiff and other Class members purchased Defendant's Benecol products, which were promoted, marketed, advertised, packaged and labeled as beneficial and as having particular beneficial characteristics as set forth above.   Pursuant to these sales, Defendant impliedly warranted that their Benecol products would be merchantable and fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in the products' promotions, marketing, advertising, packaging and labels.  In doing so, Plaintiff and other Class members relied on Defendant's representations that Benecol was beneficial and had particular beneficial characteristics as set forth above and at or about that time, Defendant sold Benecol to Plaintiff and other Class members.  By their representations regarding the reputable nature of their companies and related entities, and by their promotion, marketing, advertising, packaging and labeling of Benecol, Defendant warranted that Benecol was beneficial and had particular beneficial characteristics as set forth above.  Plaintiff and Class members bought Benecol, relying on Defendant's representations that their Products were beneficial and had particular beneficial characteristics when, in fact, they were not beneficial in that they contained highly unhealthy partially hydrogenated oils and did not otherwise conform to Defendant's warranties.

54.     Defendant breached the warranties implied at the time of sale in that Plaintiffs and Class members did not receive goods that were beneficial or that had the beneficial characteristics represented and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold.

55.     As a proximate result of these breaches of warrant by Defendant, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on products that did not have any value, had less value than warranted or that they would not have purchased and used had they known the true facts about them.

56.     THEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (On Behalf of the Class)
### (Unjust Enrichment)

57.     Plaintiff repeats and realleges every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

58.     As a result of Defendant's misleading labeling, advertising, marketing and sales of Benecol, Defendant was enriched, at the expense of Plaintiff, and all others similarly situated, through the payment of the purchase price for Benecol.

59.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff, and all others similarly situated, in light of the fact that Benecol purchased by Plaintiff, and all others similarly situated, was not what the Defendant represented it to be. Thus, it would be unjust or inequitable

for Defendant to retain the benefit without restitution to Plaintiff, and all others similarly situated, for the monies paid to Defendants for such Products.

      60.    THEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff demands judgment as follows:

A. For an order certifying the proposed Class and Sub-Class under Federal Rule of Civil Procedure 23; appointing Plaintiff as representatives of the Class and Sub-Class and appointing his undersigned counsel as class counsel;

B. For a declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.  A declaration that Defendants have committed the violations of law alleged herein;

D. Judgment for monetary relief pursuant to N.J.S.A. 56:8-1, *et seq*. on behalf of the Class;

E. Judgment for compensatory damages, the amount of which is to be determined at trial;

F.  Judgment for punitive damages;

G. Judgment for interest at the legal rate on the forgoing sums;

H. Judgment for costs of suit incurred; and

I.  Such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 27, 2011                Respectfully submitted,

                                  */s/ Richard Rinaldo*
                                **THE RINALDO LAW FIRM**
                                Richard Rinaldo
                                1767 Morris Ave, Suite 205
                                Union, New Jersey 07083
                                Telephone: (908) 352-2500
                                Facsimile: (908) 352-2770
                                *Local Counsel for Plaintiff and the Proposed Class*